## W. W. WHITE *v.* DAVID GLEASON.

*The exception of lis pendens must be pleaded in limine litis.*

*A sale made by a minor after his emancipation, and after a confession of judgment made by him on the account of the tutor, is null, when it has not been preceded by the rendition of the account and vouchers, ten days previous to the passage of the act.*

APPEAL from the District Court of the Parish Ouachita, *Richardson,* J. *S. L. Slack,* for plaintiff. *Morrison & Purvis,* for defendant and appellant.

MERRICK, C. J. The defendant is appellant from a judgment against him, rescinding the sale of two slaves, made to him by two emancipated minors, to whom he was tutor.

He had been appointed tutor to *W. W. White* and his brother *Hugh L. White,* (since deceased,) in 1856.

In 1859, the minor *Hugh L. White* arrived at the age of majority, and *W. W. White* applied to the court to be emancipated. The decree for his emancipation was signed the 17th of March, 1859. On the 19th of the same month, the tutor presented to his two wards an account of his tutorship, unaccompanied by any vouchers, wherein he claimed an indebtedness on their part towards him, of $947 26 more than their revenues. One affixed his mark (for they were both illiterate) to a confession of judgment for $486 25, and the other for $576 70.

On the 23d of March, *W. W. White* and *Hugh L. White* sold to their tutor, *David Gleason,* the two negroes in controversy for $1,600, of which the indebtedness upon the tutor's account was taken as a part, although named in the notarial act as cash paid by the vendee.

The tutor gave notice of the filing of his account, and prayed for its homologation.

*Hugh L. White* filed an opposition, in April, 1852, to the account, which appears to be still pending. The present suit is brought by *W. W. White* and the administrator of *Hugh L. White* (who in the meantime had died) to annul the sale of said slaves.

The account is alleged to be unfounded, and it is averred that the confession of judgment and act of sale were obtained by fraud, and moreover, had not been preceded by a rendition of the account and vouchers ten days previous to said acts.

The account contains items which ought not to have figured in the same, and the jury appear to have considered the charges of fraud as established. The plaintiff's right of recovery, however, has been strenuously contested in this court. The principal objections will now be considered.

I. It is objected, that the right to rescind the contract of sale cannot be exercised until the opposition to the account has been determined, and the indebtedness of the parties ascertained.

To this it may be replied, that the petition in this case alleges the nullity of the account, the confession of judgment and the sale, and is itself a direct action against all these proceedings. The defendant has, it is true, interposed the plea of *lis pendens,* but not *in limine litis.* 3 Rob. 108. There can, therefore, be no

objection to the consideration of the whole case, as far as necessary to pronounce upon defendant's title.

II. Again, it is said that there is no complaint that the price given is inadequate; and if plaintiff's indebtedness to defendant should prove to be less than the amount acknowledged in the confession of judgment, the difference can be made up in money, to be paid by defendant.

The Article 355 of the Civil Code declares " That every agreement which may take place between the tutor and the minor arrived at the age of majority, shall be null and void, unless the same was entered into after *the rendering of a full account and delivery of the vouchers*, the whole being made to appear by the receipt of the person to whom the account was rendered, ten days previous to the agreement."

The nullity is not declared for the inadequacy of the price, but because the law will not sanction contracts in any manner touching the tutor's account, where the parties stand upon such unequal footing. The tutor is in full possession of the minor's resources and debts, and what he has received and disbursed; the minor knows nothing but what his tutor is pleased to communicate. What equality is there, then, at the moment the accounts are delivered, between the tutor and his former ward?

The law seeks to restore equality before it permits the parties to contract. The minor shall have the account and vouchers ten days, in which, freed from the presence of his tutor, he may have leisure for its examination, and time to advise with friends and counsel, and time for deliberation to form his conclusions. Prior to this delay and these means of information, the law fears he may be surprised into a hasty agreement, by which he may divest himself of his property. So in the case at bar : the account was read to the parties, no vouchers were delivered to them, and in a few minutes after, they were induced to confess judgment in favor of their tutor, for amounts covering nearly one-half of their estates. It is not surprising that in two or three days afterwards, these inexperienced and illiterate young men should sell their property to their tutor, to relieve themselves from judgments which they then supposed could be enforced against them, and which, apparently, they had no other means to pay.

III. But it is contended, that Art. 355 C. C. only applies to contracts directly touching the administration of the tutor, and not to contracts about other affairs, and that, therefore, the contract of sale may remain valid notwithstanding the Article of the Code.

If the position were to be conceded, it would not avail the defendant in this case, because it is proven that unfounded charges were made in the account, in order to bring about the sale, and the indebtedness created by the account was made a part of the price of the sale. The contract in this case was, therefore, directly connected with the settlement of the tutor's account, and void under the defendant's construction of the Article.

It is sufficient to remark, that the question of putting *in mora*, (as well as the other issues on the merits,) it appears, was correctly found by the jury.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be affirmed, with costs, against the appellant.